UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEMARCUS T. YOUNG #753683,         Case No.   2:17-cv-23

    Plaintiff,         Hon. Paul L. Maloney
        U.S. District Judge

v.

KENNETH T. MCKEE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

### Introduction

This is a civil rights action brought by state prisoner Demarcus T. Young pursuant to 42 U.S.C. § 1983.  Young alleges that during his confinement at the Alger Correctional Facility, Defendants MDOC Deputy Director Kenneth T. McKee and Special Activities Coordinator David Leach refused to recognize Young's religion and provide Young with a religious meal.

Young requests that the MDOC recognize "Truition" as a religion and provide him one meal at night consisting of 2600 to 3000 calories of organic and natural food. Young explains that Truition members consume only one meal per day.

Young founded the Truition religion in 2009, and states that he is known as "Truition God Supreme, the wise soul of the universal TRUITION WORLD." (ECF No. 78, PageID.825.)   In June or July of 2016, Young requested that Defendants recognize Truition as a religion within the MDOC.   (ECF No. 1., PageID.6-7.)   On

January 4, 2017, Young's request was denied by Defendant McKee, and on January 23, 2017, his request was denied by Defendant Leach.  (*Id*. at PageID.7.)

Young says he has followed Truition beliefs since he developed his religion. Young says he believes "in the universal absolute truth" and practices daily meditation.  (ECF No. 78, PageID.820.)  Young believes that all followers of Truition are "the true and living supreme beings Truition Gods and Goddesses of the Universe and that the holy Qu'ran and Bible [are] the true and proper guidance . . . [of] supreme beings."  (*Id*.)  Young also celebrates the "Purification Day."  Young describes his religion as "simply the natural way of life and in fact is life."  (*Id*. at PageID.830.)

Young requests that the MDOC recognize the Truition religion and provide Truition members with an appropriate religious meal.  In addition, Young states that prisoners should be allowed a (1) Qu'ran or Bible, (2) meditation mat, (3) Truition flag to symbolize independence and sovereignty, (4) soldier's tag and badge, (5) Ring of Life, (6) Nationality Card/Identification Card, (7) birth certificate showing "re-birth . . . in the spirit of Truition" and (8) Truition Mane to symbolize wisdom and pure energy.  (ECF No. 78, PageID.829.)

Young asserts that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment, the First Amendment, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a).  Young requests a declaratory ruling that Defendants violated his constitutional and statutory rights and that his beliefs are religious.   Young further requests injunctive

relief, including an order directing religious services and religious meals. Young also seeks punitive damages.

Defendants filed a motion for summary judgment (ECF No. 69) and Young has filed a motion to strike part of their supporting affidavits. (ECF No. 79.)

The undersigned respectfully recommends that the Court (1) deny Young's motion to strike portions of Defendants' affidavits, and (2) grant Defendants' motion for summary judgment.

## Motion to Strike

Young asks this Court to strike statements in Defendants' affidavits because he argues that Defendants expressed their opinions, lied, and made hearsay statements. Young is free to disagree with Defendants' affidavits and present contradictory evidence that could create an issue of fact. However, Young fails to assert any valid reason to strike any relevant portion of Defendants' affidavits. Any affidavit statements used in this recommendation will be referenced.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*,

421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## Analysis

### 1. **RLUIPA**

Young asserts that it is "clearly undisputed" that his beliefs or practice are religious and sincerely held.[1] (ECF No. 78, PageID.824.) He argues that

---

[1] Defendants have not sought summary judgment on the grounds that Plaintiff's beliefs are not religious in nature or that they are not sincerely held. Initial issues presented in addressing a Free Exercise Clause claim are whether the plaintiff's beliefs are religious in nature and whether those religious beliefs are sincerely held. *United States v. Seeger,* 380 U.S. 163, 183-84 (1965). Only beliefs that are religious in nature are protected by the Free Exercise Clause. *See Thomas v. Review Bd. of the Indian Employment Sec. Div.,* 450 U.S. 707, 714 (1981); *see also DeHart v. Horn,* 227 F.3d 47, 51 (3d Cir. 2000) ("The mere assertion of a religious belief [by a prisoner] does not automatically trigger First Amendment protections ... only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection.").

The Supreme Court has carefully limited court inquiry into whether a particular set of beliefs is religious. A court may not question the validity or truth of a claimant's beliefs. *Seeger,* 380 U.S. at 184-85. "Religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas,* 450 U.S. at 714. A theistic system of beliefs is not an essential requirement of a religion. *See Torcaso v. Watkins,* 367 U.S. 488, 495 (1961). Further, a claimant need not be part of an organized religious sect or group in order for his beliefs to be considered religious. *Frazee v. Ill. Dep't of Empl. Sec.,* 489 U.S. 829, 834 (1989) ("[W]e reject the notion that to claim the protection of the Free Exercise Clause, one must be responding to the commands of a particular religious organization....").

The Sixth Circuit has not articulated a test for whether a set of beliefs is a religion, but it has noted that in the Religious Freedom Restoration Act (RFRA) context, the plaintiff must show a substantial burden to "a religious belief rather than

Defendants have substantially burdened his right to practice his religious beliefs. Young points to several reasons supporting his argument that his religious practice is substantially burdened by the denial of his request for MDOC recognition of his religion.

    1.    "[I]t is essential that the Truition body summons the source of higher intelligences as part of Truition rituals at least three times a month seeking pure energy wisdom and enlightment . . . ." (ECF No. 78, PageID.836.)

    2.    Denial of Truition services "forces him to choose between this vital tenant . . . of his religion." (*Id.*)

    3.    He must meditate three times per month "as the Family of God harmonizing our absolute unity as the Truition body . . . ."  (*Id.*)

    4.    He must "study and active[ely] demonstrate our absolute unity as the Family of God to enjoy the blessings and benefits of unity." (*Id.*)

---

a philosophy or way of life." *General Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010) (quoting *United States v. Meyers*, 95 F.3d 1475, 1482 (10th Cir. 1996)); *see also* Heid v. Mohr, No. 2:18-CV-311, 2019 WL 1024947, at *6 (S.D. Ohio Mar. 4, 2019).  Truition, as described by Young, appears to be more of a philosophy or way of life than a religion.  But, since the parties have not argued this point, the Court will not base its decision on this issue.

5. "Purification days are specifically for us to build and continue to grow as one. We must use purification days to meditate and study together also build our self discipline, obedience, humbleness, patience and collective will as a family of God." (*Id.*)

6. Denial of the Truition meal forces him to eat processed foods contaminated with chemicals, pesticides, and artificial ingredients with food colors and sugars. (*Id.* at PageID.837.)

7. Denial of religious property. (*Id.*)

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.*

> That makes the statute a three-act play. In Act One, the inmate must demonstrate that he seeks to exercise religion out of a "sincerely held religious belief." See *Holt v Hobbs*, 135 S. Ct. 853, 862 (2015). In Act Two, he must show that the government substantially burdened that religious exercise. *Id.* In Act Three, the government must meet the daunting compelling-interest and least-restrictive means test. *Id.* at 863.

*Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2009).[2]

---

2   RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities. *Haight v. Thompson*, 763 F.3d 554, 569 (6th Cir. 2014). Although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA. In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign

In addition, Congress enacted RLUIPA, in part, to expand the protections afforded to a person's religious beliefs. *Holt v. Hobbs*, 135 S.Ct. 853, 859 (2015) ("Congress enacted RLUIPA and its sister statute, the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb et seq., "in order to provide very broad protection for religious liberty") (quoting *Burwell v. Hobby Lobby Stores, Inc.,* 134 S.Ct. 2751, 2760 (2014)).

The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While this definition of religious exercise is broad, it does require that plaintiff's religious beliefs be "sincerely held." *Episcopal Student Foundation v. City of Ann Arbor*, 341 F. Supp. 2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted). Likewise, the Supreme Court has indicated that "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Hobbs*, 135 S.Ct. at 862. However, prison officials may not inquire into whether a particular belief or practice is "central" to a prisoner's religion. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held"); *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (holding that the "touchstone for determining

---

immunity under the Eleventh Amendment.

7

whether a religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed . . . are *sincerely held*,' not whether 'the belief is accurate or logical'").

While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-34 (6th Cir. 2007) (citations omitted); *Cutter*, 544 U.S. at 720 (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis. May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable"); *Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014) (finding a triable issue of fact over whether RLUIPA gives the inmates a right to have access to a sweat lodge for faith-based ceremonies, and whether RLUIPA gives the inmates a right to buffalo meat and other traditional foods for a faith-based once-a-year powwow). Similarly, if a policy requires a petitioner to "engage in conduct that seriously violates [his] religious beliefs" or face disciplinary action, then the burden is substantial. *Hobbs*, 135 S. Ct. at 862.

By the same token, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *Konikov v. Orange County, Florida*, 410

8

F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *Civil Liberties for Urban Believers*, 342 F.3d at 761.

Defendants assert that the MDOC does not need to recognize Young's religious beliefs in order for Young to practice his beliefs. Young may receive correspondence, books, publications, and other study materials. While Young identifies "Purification day" as a justification for his group worship request, he has made no effort to identify other members who share his religious beliefs. Nor can Young point to any documentation or other source that can provide any verification of his need for group religious services, other than his own claim that he desires group worship.

This analysis applies equally to Young's request for a religious meal. Defendant Leach explained that the meal Young requests is not available at the MDOC and that Young could make a separate request for his specific religious menu and could also request a therapeutic diet or request the religious meal provided by the MDOC. Young has made no effort to set forth how the denial of his meal request substantially burdens a religious belief.

Young is free to worship individually, meditate, and study the Bible and Qu'ran. In the opinion of the undersigned, there is no genuine issue of material fact

relating to the question of whether Defendants Leach and McKee have substantially burdened Young's right to practice his religious beliefs.

**2.    First Amendment-free exercise**

Young argues that there exists no penological reason that could justify denying his request for the MDOC to recognize Truition as a religious group. Defendants argue that recognizing a religious group created by Young could cause security threat issues by placing Young in a position of authority over other prisoners who chose to follow his teachings.

In addition, Young's request for one nightly meal consisting of 2600-3000 calories of certain non-artificial organic foods was denied because the MDOC did not have a menu that could accommodate his request, and MDOC policy required him to first request an alternative menu that could meet his religious dietary beliefs. Defendants argue that Young never followed policy by making an alternative menu request. Further, Defendants argue that there are alternative means for Young to practice his religious beliefs at the prison.

MDOC Policy Directive 05.03.150 (Religious Beliefs and Practices of Prisoners) (eff. 9/15/2015) directs the MDOC to recognize religious groups for the "purpose of identifying those groups authorized to conduct group religious services and attend group religious activities and for identifying authorized personal religious property." *Id*. at I. Prisoners can request departmental recognition of a religious group by submitting a written request the CFA Special Activities Coordinator. *Id*. at K. The Special Activities Coordinator could, if needed, forward the information to the

Chaplains Advisory Council for a recommendation on the request. *Id*. The recommendations from the Special Activities Coordinator and Advisory Council would be given the Deputy Director who would make the final decision on the request. *Id*. at L.

Recognition shall be granted to a group "determined to be a bona fide religious group with beliefs and practices not adequately represented by an existing recognized group, based on any recommendation received from the [Chaplains Advisory Council.]" *Id*. The decision to possess "personal religious property" shall be determined based upon whether possession of the property was a custody or security threat. *Id*. The decision to allow group religious services shall be based upon the number of prisoners identified as belonging to the group. *Id*.

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish a violation, Young must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Prison officials may impinge on a prisoner's constitutional right to exercise First Amendment religious beliefs if their actions are "reasonably related to legitimate penological interests." *Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

> 1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. are there alternative means of exercising the right that remain open to prison inmates;
>
> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological

interest.  *Flagner*, 241 F.3d at 484 (citations omitted).  It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint" *Id*.  Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest.  *Id.*  "However, 'if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.'"  *Id.* at 484 (quoting *Turner*, 482 U.S. at 91.)

Young argues that no legitimate penological reason exists for denying recognition of his religious group and his request for a religious meal.  Defendants assert that, since Young created his beliefs, he would be placed in a position of authority over prisoners that might choose to follow Young and this could create a potential security threat at the prison.

Defendant Leach recommended denial of group recognition for Young's religious beliefs since Young created the beliefs and could be considered as an authority over prisoners who chose to follow him.  (affidavit ECF No. 70-3, PageID.774.)  Defendant Leach believed that this could jeopardize prison safety and security.  (*Id.*)  Defendant McKee agreed and denied group religious services for Young's religious beliefs.  (affidavit ECF No. 70-4, PageID.46.)

13

In addition, Youngs request for one nightly, organic religious meal free from chemicals, pesticides, artificial ingredients, coloring, and sugar was denied because the MDOC did not have an existing menu that could satisfy Young's requirements. (ECF No. 70-3, PageID.774-775.) Young was instructed to make an alternative menu request. (*Id.*)

Defendants assert that there are alternative means for Young to practice his beliefs. Young may study scripture, meditate, and practice his beliefs in other manners. Defendant Leach noted he had informed Young that he could still apply for a religious meal, receive visits from clergy, and study and exercise his beliefs in compliance with the rules of the facility.  (ECF No. 70-3, PageID.774.) Young could still correspond with others, receive books, publications, and study materials.  (*Id.* at 774.)

Finally, Defendants argue that religious group recognition for Truition, would place increased demands on correctional staff and could lead to greater division among the prison population.  Defendants assert that there are no obvious and easy alternatives to recognition of Truition for group service and that prison has economic and security interests in preventing potential conflicts and increased costs.

As explained above, Young is free to worship individually, meditate, and study the Bible and Qu'ran.  In addition, the meals that Young requests are not available at the MDOC, although he could make a separate request for his specific religious menu and could also request a therapeutic diet or request the religious meal provided by the MDOC.  Furthermore, MDOC's decision to not recognize Truition does not

14

unlawfully impact Young's ability to adhere to the tenets of this system. in the opinion of the undersigned, the *Turner* factors weigh in favor of the Defendants. Defendants have set forth rationale security concerns for denying Young's request for recognition of Truition and his requested religious diet. Thus, there is no genuine issue of material fact relating to the issue of whether Defendants' infringed upon this practice or belief.

### 3.  **Fourteenth Amendment-equal protection**

Young argues that his equal protection rights are being violated. Young asserts that his request to recognize Truition as a religion was denied soley due to the fact that he created Truition and that "could potentially place [him] in a position of authority over other prisoners who might choose to follow his teaching." Young argues that this reason is contradictory to Policy Directive 05.03.150 (Religious Beliefs and Practices of Prisoners) (eff. 9/15/2015) which allows prisoners to assist the Chaplain, and places those prisoners in a position of authority over other prisoners.

Policy Directive 05.03.150 provides:

FF.   The institutional Chaplain may approve a prisoner to temporarily assist in leading a group religious service only if the Chaplain is not theologically qualified or ecclesiastically permitted to lead the service and there are no qualified outside volunteers nearby who are available to lead the service.  In such cases, in-room staff supervision shall be provided as set forth in Paragraph Y.  Prisoners acting as temporary assistants to the Chaplain shall not be recognized by courtesy titles (e.g., Minister, Priest, Reverend, Imam, Padre, Father, Sister, Brother, Grand Sheik) in the institution.  They also shall not represent themselves to members of the public, staff or other prisoners with such titles.

*Id*.

Young argues that he is not seeking a position of authority over other prisoners, but is only an "enlightener, in which all have the opportunity to be." (ECF No. 78, PageID.846.) In addition, Young states that the MDOC recognizes twenty religious groups and allows prisoners belonging to these groups to possess religious property and reading materials, and to attend group worship services.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the Equal Protection Clause, the government is prohibited from engaging in discrimination that: (1) burdens a fundamental right; (2) targets a suspect class; or (3) "intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). When neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Midkiff v. Adams Cty.*, 409 F.3d 758, 770 (6th Cir. 2005).

In the opinion of the undersigned, Young has failed to show that his equal protection rights were violated by Defendants. Young has not presented facts showing that he was treated differently to a similarly situated prisoner. The fact

16

that an MDOC policy allows prisoners to assist the Chaplain, does not establish that Young is similarly situated to any prisoner that assists the Chaplain.[3] Young created Truition and is seeking MDOC recognition of his belief system as a newly recognized religion. In the opinion of the undersigned, Young has failed to establish that any other prisoner confined within the MDOC, who was similarly situated to Young, was treated differently. I respectfully recommend that Court dismiss Young's equal protection claim.

### 4. Qualified Immunity

As an alternative argument, Defendants move to dismiss Young's damages claims by asserting qualified immunity from liability. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006).

---

[3] Young has provided affidavits from prisoners who have observed other prisoners lead a religious service. (ECF No. 78-2, PageID.875-877.)

"A right is 'clearly established' for qualified immunity purposes if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156 (2001)). The inquiry whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156; *see also Plumhoff v. Rickard*, 572 U.S. 765, 779, 134 S. Ct. 2012, 2023 (2014) (directing courts "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced") (internal quotation marks and citations omitted). Thus, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Humphrey*, 482 F.3d at 847 (internal quotation marks omitted).

"The relevant inquiry is whether existing precedent placed the conclusion" that the defendant violated the plaintiff's rights "in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 36 S.Ct. 305, 309 (2015), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).   Young has not shown, nor can he show, that Defendants were required to recognize Truition as a religion for purposes of group services and to provide Young with his requested meal.   In the opinion of the undersigned, Defendants Leach and McKee acted reasonably in light of clearly established law, and are entitled to qualified immunity on the issue of damages.  *See Blalock v. Jacobsen*, No. 13-CV-8332, 2016 WL 796842, at *1, *4 (S.D.N.Y. Feb. 22, 2016) (granting qualified

immunity on free exercise claim where an inmate — "an orthodox Muslim" who "wears his state-issued pants hemmed above his ankles, to comply with a Muslim religious edict" — challenged a prison official's memorandum generally forbidding such hemming, because "neither the Supreme Court nor the Second Circuit has ever ruled that a prisoner's right to free exercise encompasses the right to wear pants at any particular length" (citation omitted)); *Breland v. Goord*, No. 94-CV-3696, 1997 WL 139533, at *8 (S.D.N.Y. Mar. 27, 1997) ("Neither the Supreme Court nor the Second Circuit ... has held that Five Percenters constitute a religion and no court has spoken to the constitutional protections to be afforded Five Percenter literature.... While the claims here come perilously close to the line, the narrow and fact-specific manner in which this Circuit defines qualified immunity leads to the conclusion that defendants here did not violate a clearly established right of plaintiff's and they are entitled to qualified immunity."); *Allah v. DePaolo*, No. 17-CV-6313 (KMK), 2019 WL 1367608, at *8 (S.D.N.Y. Mar. 26, 2019), *opinion vacated in part on reconsideration*, No. 17-CV-6313 (KMK), 2019 WL 1649021 (S.D.N.Y. Apr. 4, 2019) (granting qualified immunity because neither the Second Circuit nor the Supreme Court had recognized Nations of Gods and Earths (NGE) as a religion); *Kaufman v. McCaughtry*, 422 F.Supp.2d 1016, 1023 (W.D. Wis. 2006) (defendants entitled to qualified immunity because atheism was not a recognized religion at the time of the prison restrictions).

## Recommendation

I respectfully recommend that the Court grant the motion for summary judgment (ECF No. 69) filed by Defendants Leach and McKee. In addition, it is recommended that the Court deny Plaintiff's motion to strike (ECF No. 79.)

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   July 16, 2019                                /s/ *Maarten Vermaat*
                                                     MAARTEN VERMAAT
                                                     U.S. MAGISTRATE JUDGE